42 C.C.A.(Patents)

**Application of PHILLIPS.**
**Patent Appeal No. 6065.**

United States Court of Customs and Patent Appeals.
Feb. 8, 1955.

Hyde, Meyer, Baldwin & Doran, and John W. Meyer, Cleveland, Ohio, for appellant.

E. L. Reynolds, Washington, D. C. (Clarence W. Moore, Washington, D. C., of counsel), for Commissioner of Patents.

Before O'CONNELL, Acting Chief Judge, and JOHNSON, WORLEY, and COLE, Judges.

WORLEY, Judge.

Involved here is an application, serial No. D-1,423, filed March 16, 1949, for a design patent relating to a "Preformed Finishing Corner Strip for the Shingled Side Walls of Residential or other Building Structures." The Primary Examiner rejected the application as "lacking in patentable design invention" over the cited references. The rejection was affirmed by the Board of Appeals, and applicant appeals to this court.

The cited references are Blank 2,110,-258 March 8, 1938; Clapp 2,142,177 January 3, 1939; De Vault 2,307,734 January 12, 1943.

Appellant's device is designed for ornamental use on the outside corners of structures having shingled sides and it also appears to have the utilitarian purpose of covering the corner where the shingles meet to protect them against weather damage. Appellant states that the particular ornamenation of his corner strip gives it an appearance which definitely distinguishes it from the cited art, and creates "a corner strip with a most attractive eye appeal and which has been a major factor in its success."

The strip is of right angular shape in cross section (similar in appearance to an angle iron), with each of the two side walls of the strip of tapered form, i. e., of progressively increasing width from top to bottom. At the bottom of each side wall is an inwardly projecting portion. To this basic cornerpiece appellant has added longitudinal grooves or flutes, of varying depth and spacing, which are generally parallel with the outer side walls of the strip, and, because of the tapering of the strip, the grooves appear to converge in acute angles at the center bend of the strip. The grooves or flutes terminate some distance below the upper end of the strip.

The Blank patent is a utility, as distinguished from a design, patent, as are the other references cited. The Blank device, although unornamented, is admittedly of the same general structural character as appellant's corner strip, but differs in having flanges at the upper end for nailing the cornerpiece to the building, and differs somewhat in the shape of the inwardly extending bottom portion. It is described as bent into "cross sectional angled form" to "cover the corner joint" between adjacent siding shingles, and as "tapered from its bottom to the top" to fit more neatly into position.

The Clapp patent is directed to a metal shingle, and has lengthwise corrugations, or grooves, of uniform depth and spacing. The corrugations serve the purpose of adding strength to the shingle, permitting it to be bent lengthwise around corners, and enhancing its beauty.

The De Vault patent is directed to a "Ceramic Shingle" which closely imitates the appearance of a wood shingle. De Vault was particularly interested in bringing out the appearance of graining in a ceramic shingle, thus the irregular graining associated with a wood shingle is clearly shown in his illustration.

In rejecting appellant's application, the examiner was of the opinion that providing the plain surface cornerpiece of the Blank type with a plurality of vertical grooves to simulate the grain effect of a conventional shingle, was a mere carrying forward of the grain effect of a shingle of the De Vault type.

The Board of Appeals in affirming the examiner, stated

"* * * We do not believe that, upon using the Blank cornerpiece in combination with the shingles presenting a prominent grained surface, it would take the average builder long to determine that the appearance of the structure could be greatly improved by modifying the plain surface of the cornerpiece so as to conform generally with the surface appearance of the grained shingles. Such a change in the Blank cornerpiece would merely call for the exercise of the imitative faculties of a routine designer."

It has been long held by the courts that a patentable design must involve invention beyond the capabilities of one having ordinary skill in the art.

It seems obvious that, in view of the teachings of record, it would not require exercise of the inventive faculty to do what appellant has done. Although we agree with the board that appellant's structure differs in certain details from the prior art and, to a degree constitutes an improvement thereover, the device is well within the scope of one skilled in the art.

For the reasons hereinbefore stated, it follows that the decision of the Board of Appeals must be affirmed.

Affirmed.

On account of illness, GARRETT, Chief Judge, did not participate in the hearing or decision of this case.